IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Richard H. Barnes, Jr., | C.A. No. 6:22-cv-04633-DCC |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| Jack Porter, Inc., | |
| Defendant. | |

This matter is before the Court on Defendant's Motion to Dismiss, or in the Alternative, to Join an Indispensable Party. ECF No. 18. Plaintiff filed a Response in Opposition, and Defendant filed a Reply. ECF No. 21, 23. For the reasons set forth below, the Motion is granted in part and denied in part.

## BACKGROUND

On July 1, 2012, Plaintiff entered into an Agreement (the "2012 Agreement") with US Presswire, LLC ("Presswire"), whereby Plaintiff assigned rights related to photographic materials produced by Plaintiff.[1] ECF No. 21-5. The 2012 Agreement provides in part:

> [Plaintiff] hereby grants to [Presswire] the exclusive worldwide right to use, copy, perform, display, market, distribute, license, sub-license and negotiate the production rights of all

---

[1] Without converting a motion to dismiss into a motion for summary judgment, a court may consider the attachments to the complaint, documents incorporated in the complaint by reference, and documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citing *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006)).

> photographic images, digital files, video images or footage and all other photographic materials that are delivered to [Presswire] by [Plaintiff] . . . in any and all media, now known or hereafter developed, whether such Images are created by [Plaintiff] while working under credentials issued from or through [Presswire] or otherwise. Notwithstanding the foregoing, [Plaintiff] shall retain the copyright to the Images and [Plaintiff] shall have a limited right to license the Images to [Plaintiff's] own editorial clients.

*Id.* at 2. On September 9, 2016, while attending a college football game, Plaintiff created a photograph (the "Second Hurdle Photograph") of then college football player Lamar Jackson ("Jackson") leaping over an opposing team defender. ECF No. 1 at 3. On October 31, 2016, Plaintiff registered the photograph with the United States Copyright Offices. *Id.* In 2019, Defendant, a for-profit corporation that offers and renders design and consulting services, contracted with the University of Louisville to renovate the Howard Schnellenberger Football Complex (the "Schnellenberger Complex"). *Id.* at 5, 7. As part of the renovations, Defendant designed and built a mannequin (the "Mannequin") modeled after Jackson's leap during the game in which Plaintiff created the photograph. *Id.* at 8. On September 3, 2019, Defendant installed the Mannequin at the Schnellenberger Complex. *Id.* Plaintiff alleges that the Mannequin is replicated and modeled after Jackson's famous leap as depicted in the Second Hurdle Photograph. *Id.* Defendant displayed photographs of the Mannequin on its website and social media accounts. *Id.* at 9.

On December 30, 2019, Plaintiff entered into an Agreement (the "2019 Agreement") with Imagn Content Services, LLC ("Imagn"), the successor of Presswire, whereby Plaintiff assigned rights related to photographic images produced by Plaintiff. ECF No. 19-2. The 2019 Agreement provides in part:

2

> [Plaintiff] hereby grants to [Imagn] the perpetual worldwide rights to reproduce, distribute, publicly perform, publicly display, market, license, sub-license and negotiate the rights to, edit, and otherwise use, all photographic images delivered to [Imagn] by [Plaintiff] . . . in any and all media, now known or hereafter developed, whether such Images are created by [Plaintiff] while working under credentials issued through [Imagn] or otherwise. During the term of this Agreement and any renewals thereof, the rights granted herein to [Imagn] shall be exclusive. Following termination of this Agreement, [Imagn's] rights shall be non-exclusive. Notwithstanding the foregoing, [Plaintiff] shall retain the copyright to the Images and [Plaintiff] shall have a limited, non-exclusive right to license the Images to [Plaintiff's] own editorial clients during the term of this Agreement.

*Id.* at 1.

On February 10, 2021, a blog post concerning the Mannequin ("the Mannequin Blog Post") appeared on Defendant's website, featuring a logo (the "Logo") Plaintiff alleges is replicated and modeled after the Second Hurdle Photograph. ECF No. 1 at 9–10. Defendant never obtained Plaintiff's permission or authorization to copy from the Second Hurdle Photograph. *Id.* at 9. On June 17, 2022, counsel representing Plaintiff sent a letter to Defendant advising Defendant of its infringement on Plaintiff's copyrights and demanding that Defendant remove photographs of the Mannequin and the Logo accompanying the Mannequin Blog Post from Defendant's website and social media accounts. *Id.* at 10. Subsequent to June 17, 2022, the photographs of the Mannequin and the Mannequin Blog Post and accompanying Logo were removed from Defendant's website. *Id.* at 10–11. On August 19, 2022, counsel representing Defendant sent a letter to Plaintiff denying infringement of any copyrights owned by Plaintiff. *Id.* at 11.

On December 22, 2022, Plaintiff filed a Complaint asserting a copyright infringement claim against Defendant. ECF No. 1. On February 14, 2023, Defendant filed

3

a Motion to Dismiss, or in the Alternative, to Join an Indispensable Party. ECF No. 18. On February 28, 2023, Plaintiff filed a Response in Opposition to Defendant's Motion to Dismiss. ECF No. 21. On March 7, 2023, Defendant filed a Reply to Plaintiff's Response to Defendant's Motion to Dismiss. ECF No. 23. Accordingly, this matter is ripe for review.

## APPLICABLE LAW

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Lack of subject matter jurisdiction may be raised at any time by a party or the court. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). "When a Rule 12(b)(1) motion challenge is raised to the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). In deciding the motion, "the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Mowery v. Nat'l Geospatial-Intelligence Agency*, 42 F.4th 428, 433 (4th Cir. 2022) (quoting *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004)). "[W]hen the jurisdictional facts are inextricably intertwined with those central to the merits, the court should resolve the relevant factual disputes only after appropriate discovery, unless the jurisdictional allegations are clearly immaterial or wholly unsubstantial and frivolous." *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009).

"Issues of mootness are properly the subject of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction as the doctrine 'constitutes a part of the constitutional limits of federal court jurisdiction.'"

4

*Carmen's Corner Store v. Small Bus. Admin.*, 520 F. Supp. 3d 726, 730 (D. Md. 2021) (quoting *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 763 (4th Cir. 2011)). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017) (citations omitted), or when the court's "resolution of an issue could not possibly have any practical effect on the outcome of the matter," *Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 161 (4th Cir. 2010).

## **ANALYSIS**

Defendant contends that Plaintiff lacks federal question subject matter jurisdiction because Plaintiff lacks standing to bring the lawsuit. ECF No. 19 at 4. Defendant contends that to bring a suit for copyright infringement under the Copyright Act, a party must either be a beneficial or legal owner of an exclusive right under the copyright at issue. *Id.* Defendant argues that the language in the Grant of Authority in the 2019 Agreement that states that Plaintiff "hereby grants . . . the perpetual worldwide rights to reproduce, distribute, publicly perform, publicly display, market, license, sub-license and negotiate the rights to, edit, and otherwise use" amounts to a wholesale conveyance of all rights in the Second Hurdle Photograph to Imagn. *Id.* at 5. According to Defendant, even though the Complaint alleges a violation of the exclusive right to prepare derivative works, the broad transfer of rights under the Grant of Authority includes the right to prepare derivative works. *Id.* at 9. Under the 2019 Agreement, Defendant contends that Plaintiff only retains the right to license photographs to Plaintiff's own editorial clients, which Defendant did not do, and fails to reserve the right to prepare derivative works. *Id.* at 6, 9. As to whether Plaintiff is a beneficial owner, Defendant asserts that Plaintiff is entitled to scheduled

5

assignment fees from Imagn for photographing events in lieu of receiving royalties from any photographic materials. *Id.* at 8. Defendant argues that Plaintiff is also not entitled to royalties because at termination of the 2019 Agreement, Imagn must only pay Plaintiff "previously incurred, unpaid assignment fees." ECF No. 19-2 at 4.

In addition, Defendant argues that Plaintiff does not have an exclusive right to pursue claims for copyright infringement. ECF No. 19 at 10. Paragraph 7 of the 2019 Agreement provides in part:

> [Plaintiff] hereby grants [Imagn] the exclusive right and authority to make claims or to institute proceedings for the infringement, misuse or unauthorized use of the Photographs . . . . All settlements shall be made in [Imagn's] sole and absolute discretion, with settlement proceeds to be split equally with [Plaintiff]. If [Imagn] chooses not to pursue any such claim, [Plaintiff] may do so only if granted written permission by [Imagn].

ECF No. 19-2 at 3–4. Defendant contends that Paragraph 7 grants Imagn the exclusive right to pursue claims for copyright infringement, and Plaintiff's ability to pursue any claim is conditioned upon Imagn's written permission. ECF No. 19 at 10–11. Further, Defendant argues that even if Plaintiff has a right to pursue claims for copyright infringement, a bare right to sue cannot in and of itself constitute standing under the Copyright Act. *Id.* at 11.

In contrast, Plaintiff contends it has standing to bring this suit because it is at least the beneficial owner of the copyright at issue and is the legal owner to the extent Plaintiff retained the exclusive right to prepare derivative works. ECF No. 21 at 5, 8. Plaintiff contends that it is the beneficial owner because under Paragraph 6 of the 2019 Agreement, Plaintiff argues that it conveyed legal title to the copyright in exchange for royalties. *See* ECF No. 19-2 at 3 (stating "Notwithstanding the foregoing, should [Imagn] receive payment for any commercial use of the Images, any such net proceeds shall be

6

split equally between [Imagn] and [Plaintiff]."). Plaintiff asserts that it is the legal owner of the right to prepare derivative works because the language in the Grant of Authority in the 2019 Agreement allegedly tracks §106 of the Copyright Act, but the omission of the right to prepare derivative works allegedly indicates an intent between Plaintiff and Imagn to reserve the right for Plaintiff. ECF No. 21 at 9–10. Further, Plaintiff contends that the terms in the Grant of Authority including "adapt," "edit," "crop or modify," "reproduce," and "edit, and otherwise use," do not amount to the right to prepare derivative works because Plaintiff argues that a derivative work involves adding new elements to the original work, with mere revisions being insufficient to constitute a derivative work. *Id.* at 13–14 (citing *Watkins v. Chesapeake Custom Homes, L.L.C.*, 330 F. Supp. 2d 563, 573–74 (D. Md. 2004) (stating that "[a]s mere revisions, the drawings are not distinguishable variations from the works on which they are based")). As to whether Plaintiff has an exclusive right to pursue claims for copyright infringement, Plaintiff contends that any language in Paragraph 7 of the 2019 Agreement is wholly unrelated to the rights conveyed in the Grant of Authority, and as a result, does not affect whether Plaintiff has standing under the Copyright Act. *Id.* at 22.

Plaintiff also argues that the 2012 Agreement between Plaintiff and Presswire—not the 2019 Agreement between Plaintiff and Imagn—controls the present case. *Id.* at 25–26. Plaintiff contends that the 2012 Agreement was in effect when at least some of the alleged infringing activities occurred, i.e., Defendant's installation of the Mannequin on September 3, 2019, given that Plaintiff and Imagn executed the 2019 Agreement in December 2019. *Id.* at 26.

However, Defendant argues that Plaintiff is not a beneficial owner of the copyright

to the Second Hurdle Photograph because splitting net proceeds for any commercial use of the photographic materials pursuant to Paragraph 6 of the 2019 Agreement does not amount to royalties, but rather scheduled assignment fees from photographing events. ECF No. 23 at 5. Defendant further contends that Plaintiff did not retain any exclusive rights under the 2019 Agreement because the Grant of Authority effectively transferred all exclusive rights to Imagn, including the right to prepare derivative works, with the exception of licensing photographs to Plaintiff's own editorial clients. *Id.* at 2. In addition, Defendant contends that "adapt," "edit," "crop or modify," "reproduce," and "edit, and otherwise use" amounts to the right to prepare derivative works because a derivative work includes "[a] work consisting of editorial revisions, annotations, elaborations, or other modifications." *Id.* at 3 (citing 17 U.S.C. § 101). In regard to whether the 2012 or 2019 Agreement controls, Defendant argues it does not matter which Agreement controls because both Agreements grant Presswire/Imagn the worldwide right to license, sub-license, and negotiate the right to Plaintiff's photographic materials, which amounts to a wholesale conveyance of all exclusive rights. *Id.* at 7.

Having reviewed the arguments and submissions of the parties, the Court finds that Defendant's Motion to Dismiss should be granted in part and denied in part. In order for a party to file suit pursuant to federal question subject matter jurisdiction, the party must establish that it has standing to bring the suit. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The Copyright Act provides that "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). "The [legal] owner of an exclusive right is either the author of the work in

question or an assignee of the right." *Kevin Chelko Photography, Inc. v. JF Restaurants, LLC*, C.A. No. 3:13-CV-00060-GCM, 2017 WL 240087, *2 (W.D.N.C. Jan. 19, 2017) (citing 17 U.S.C. § 204(a)). "[T]he paradigmatic example of a beneficial owner is the author who transfers her legal title in a copyrighted work to another person in exchange for royalties based on future sales or licensing of the copyrighted work." *AMO Dev., LLC v. Alcon Vision, LLC*, C.A. No 20-842-CFC, 2023 WL 356161, at *3 (D. Del. Jan. 23, 2023) (citing H.R. Rep. No. 94-1476, at 159). Clear intent is required to transfer full ownership of a copyright. *Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc.*, 747 F. App'x 3, 5 (2d Cir. 2018).

The Court first turns to whether Plaintiff is a legal owner of an exclusive right as to the copyright of the Second Hurdle Photograph. Here, Plaintiff has standing under the Copyright Act to pursue claims for copyright infringement related to the Second Hurdle Photograph until December 30, 2019, but does not have standing to pursue any copyright infringement claims related to the Second Hurdle Photograph occurring on December 30, 2019, or any time thereafter. Under the 2019 Agreement, executed on December 30, 2019, Plaintiff conveyed to Imagn "the perpetual worldwide rights to reproduce, distribute, publicly perform, publicly display, market, license, sub-license and negotiate the rights to, edit, and *otherwise use*, all photographic images delivered to [Imagn] by [Plaintiff]." ECF No. 19-2 at 1 (emphasis added). The catchall language "and otherwise use" indicates a clear intent to transfer all exclusive rights related to photographic images, including the Second Hurdle Photograph, to Imagn. In *Creazioni*, the court held that the plaintiff lacked standing to bring a suit for copyright infringement against the defendants. *Creazioni Artistiche Musicali, S.r.l.*, 747 F. App'x at 6. While the original owner conveyed to the

9

plaintiff "[a]ll rights to use the music . . . for the entire world with the right to transfer it in whole or in part to third parties," the language "so long as your rights are not prejudiced or limited" evidenced an intent of the original owner of the copyright to retain some rights to the work. *Id.* Here, however, Plaintiff conveyed a number of exclusive rights to Imagn, including the right to otherwise use, a catchall phrase that incorporates any remaining exclusive rights, including the right to prepare derivative works.[2] ECF No. 19-2 at 1. Plaintiff retained "a limited, non-exclusive right to license Images to [Plaintiff's] own editorial clients," but there is no allegation that Defendant infringed on such a right. *Id.*

The 2012 Agreement between Plaintiff and Presswire, Imagn's predecessor, lacks a catchall phrase that could incorporate any remaining exclusive rights and fails to convey a right to prepare derivative works. As a result, Plaintiff retained the right until Plaintiff executed the 2019 Agreement on December 30, 2019. Given that Defendant installed the Mannequin at the Schnellenberger Complex on September 3, 2019, while the 2012 Agreement was still in effect, Plaintiff has standing to bring suit against Defendant for this alleged infringement of the copyright to the Second Hurdle Photograph until December 30, 2019.

Plaintiff argues that the Grant of Authority in the 2019 Agreement tracks § 106 of the Copyright Act and that the Court should infer the omission of the right to prepare

---

[2] At this procedural posture, Plaintiff has sufficiently pleaded that the Mannequin implicates the right to prepare derivative works. The Copyright Act defines "[a] 'derivative work' as a work based upon one or more preexisting works . . . . A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole represent an original work of authorship, is a derivative work.'" 17 U.S.C. § 101. Plaintiff alleges that "[t]he Mannequin includes details or features which are only present in the Second Hurdle Photograph . . . such as the angle and position from which [Plaintiff] created the Second Hurdle Photograph." ECF No. 1 at 8.

derivative works as intentional and therefore retained by Plaintiff. ECF No. 21 at 10. It is axiomatic in contract interpretation that the plain language of the parties' agreement controls. *See Lewis v. Premium Inv. Corp.*, 568 S.E.2d 361, 367 (S.C. 2002) (citing *C.A.N. Enters., Inc. v. South Carolina Health & Hum. Servs. Fin. Comm'n*, 373 S.E.2d 584, 586 (S.C. 1988) (stating that "[b]asic contract law provides that when a contract is clear and unambiguous, the language alone determines the contract's force and effect")). The 2012 Agreement is ambiguous in that the omission of the right to prepare derivative works could have been intentional, but the parties could also have specifically reserved rights to prepare derivative works if that was their intent. However, the 2019 Agreement is unambiguous as the catchall provision—"and otherwise use"—expressly controls.

Plaintiff also cannot rely on being a beneficial owner under the 2019 Agreement because Plaintiff only retained the right to receive assignment fees from Imagn for the use of any photographic materials. While Paragraph 6(e) provides that Plaintiff will receive "any . . . net proceeds" from the "commercial use of the Images" to be split equally between the parties, Paragraph 6(e) imposes no obligation on Imagn to secure payment for the commercial use of the Images and if the Agreement terminates, Imagn is "responsible for paying . . . any previously incurred, unpaid assignment fees owing at termination," with no mention of net proceeds stemming from commercial use or royalty payments. *Id.* at 3–4. Under the terms of the 2019 Agreement, Plaintiff would have a right to a portion of any proceeds realized by Imagn; however, there is no allegation that Defendant has paid Imagn for the alleged use of the photograph. The plain language of the 2019 Agreement fails to bestow an independent right to compel payment on Plaintiff.

In addition, "[b]eneficial owners are those without legal title, but with an interest in

royalties or licensing fees *flowing from* an exclusive right." *Viesti Assocs., Inc. v. Pearson Educ., Inc.*, C.A. No. 11-cv-0 1687-PAB-DW, 2014 WL 1053772, at *6 (D. Colo. Mar. 19, 2014) (emphasis added) (citing *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 886 (9th Cir. 2005)). "[A] beneficial owner[] must show that they are the owner[] of at least one exclusive right set forth in § 106." *Id.* (citing *Hyperquest, Inc. v. N'Site Sols., Inc.*, 632 F.3d 377, 382 (7th Cir. 2011)). As discussed above, Plaintiff retained no exclusive rights under the 2019 Agreement, and even if Plaintiff successfully pleaded that it is a beneficial owner of the copyright in question, Plaintiff is not a beneficial owner flowing from any exclusive right. Plaintiff conveyed all exclusive rights as to the Second Hurdle Photograph to Imagn as of December 30, 2019.

Defendant argues that, in the alternative, the Court should join Imagn as an indispensable party. The Court disagrees. As to any claim arising on or after December 30, 2019, as set forth above, these claims are subject to dismissal. As to any claims arising before December 30, 2019, the Court can afford relief between Plaintiff and Defendant, and Imagn has not claimed an interest relating to the Second Hurdle Photograph. *See* Federal Rule of Civil Procedure 19(a)(1).

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss [18] is **GRANTED in part and DENIED in part** as set forth above. The Motion to Join an Indispensable Party is **DENIED**.[3]

---

[3] Accordingly, Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) is moot.

IT IS SO ORDERED.

                                                            s/ Donald C. Coggins, Jr.
                                                            United States District Judge

September 26, 2023
Spartanburg, South Carolina